Appellate No. 16-1256 My name may please the Court. My name is Attorney Cynthia Pollack and I represent Patricia Jennings-Fowler and I reserve three minutes for rebuttal. The first issue I'm going to address with the Court, I believe, is the easiest one for this Court to decide, which is the retaliation claim, Count 5. The defendants never moved for the dismissal of that count in the complaint, but yet the District Court dismissed it sua sponte without providing plaintiff an opportunity to cure that any defects that the District Court found. Was the retaliation claim exhausted? I'm sorry, what did you say? Was the retaliation claim exhausted, meaning was it presented to the EEOC? Absolutely. Thank you. And the Alston matter, which this Court decided, said you must provide someone a curative amendment, even when they don't ask for it. In this case, I asked for it within my brief in opposition. If there were any defects with 1 through 4, obviously I didn't know about 5, which I believe is a due process violation. You have to give me notice you're going to dismiss something before you dismiss it. Let me argue why you shouldn't. Did you get that chance on your reconsideration motion? No, I did not, because of the fact the Court, although I had 7 days to amend my complaint when he issued his order of dismissal, he did not allow me to amend the Count 5, which would have clarified and added more evidence. Really, what I did was just plead evidence, not anything more than that, that it was retaliatory because of the fact she filed a complaint with the employer on 7-26-2013. On 8-6-2013, she was put under private surveillance, the only employee in the department, while a male employee who would take his child, pick up his children on company time was never put under surveillance. On 8-20, she files an official EEOC complaint, and then on 9-13, the employer becomes aware of it. On 9-25, she's out the door on a suspension. What's the protective activity? Because that's what it has to be, right? Retaliation for protected activity. What's your protected activity? She was very vocal against the administration, as well as she filed a claim of harassment with the city. So your protected activity is not limited to the EEOC complaint, it includes the email that you sent in July, as well as the fact she was a critical opponent of the administration. Put aside the political retaliation claim, put it as a political component of it and focus on the gender and also work environment. Okay. Because that's really what that email dealt with. It didn't deal with her concerns with the mayor and others. Correct. So you couldn't have that to be protected activity for the political, voicing out her politics, when the only thing she voiced in that email was the way she felt she was treated in the workplace. Yeah, I'm the only woman in a man's job and I'm being discriminated against. So she does that on 7-26. They put her under secret surveillance on 8-6, 2013, without her knowledge. And then 8-13, she files the official EEO. 8-20, they get notice of it. And then 8-25, she's suspended without pay and she had no disciplinary actions in her record. They have a progressive discipline policy at the city of Scranton, so they should have followed that. They didn't follow that. They departed from that. That all leads to show that timing and this would lead to a solid retaliation claim against the employer. What's the causal connection? I've been waiting for, I guess, a month to ask you a question. And the question is this. The notice that you got was that the city has no record of you being at the specified location. Now, when I read that, that didn't mean to me you weren't there. What it meant was I don't have a record of it. Now, I don't know what kind of records they keep. Did anybody ever charge? Are there any charges that you weren't there?  It's miles within the city of Scranton. What is it, about buck? I mean, I just don't understand. How much is involved here? Okay, and that is the second claim, which would be the due process claim. And clearly, everything that you're questioning is what my client had to have a crystal ball and wonder, what did I do wrong? It's as if Judge Schwartz, on Friday, Chief Judge Smith tells you, you know, you weren't, on Wednesday, you didn't do what you were supposed to do. You weren't where you were supposed to do. And you're going to say, hey, I did four oral arguments. I worked my tail off. And he's like, no, no, no, you're still suspended. They didn't tell her. They didn't say she didn't do what she was supposed to do. The notice said the city has no record of you being at the specified location. That's not a charge that she wasn't there, just a charge that I don't have a record. And I would disagree with you, Your Honor, only because of the fact that they had three pieces of paper, documentation they could have provided her. They had her mileage report. If there's an issue with the mileage, show it to her at the pre-disciplinary hearing so she can say, hey, no, look at the guy who followed me. He charged 55 miles. I only charged 16, if that's your issue. They never told her what the problem was. They had secret surveillance video tape of her. They should have showed her that at the pre-disciplinary hearing. They thought out why and said they didn't have that. They had photographic material. They didn't provide that. They provided her absolutely no notice of what she actually did on the days in question. And, again, the first one was 8-22. The second one was 8-28, and they switched it to 9-3. She goes into the hearing. The minute she goes in, they switch the date on her that somehow she did something wrong on that day, but they never specified what she did wrong on that day. Did they tell her where she should have been? As a housing person, you go all over based on violations within the city. So she doesn't have to be at a certain spot at a certain time. It may take 20 minutes to do one violation. It may take an hour and a half to do another. So what did they tell her? To refresh my recollection, exactly what was said. That they had a feeling that she wasn't where she was supposed to be. But here all along, they had video evidence of her during that entire day. So if you thought she was doing something wrong, why didn't you specifically tell her what she did wrong? In order for due process to have any force, you have to tell the employee what went by and how. You can't just let the employee have a crystal ball. Oh, this is what I did wrong. Well, the district court, though, made an observation based upon your client's description of what she did after getting the notice. She went to her office, got on her computer for as long as she could, and began to print materials to be able to address her activities those days. And from that, the district court, as I understand it, concluded she had notice. And therefore, the type of notice one is entitled to in this sort of situation was fulfilled. Why is that wrong? Because of the fact she didn't know. It was really their issue with mileage and things of that. She didn't even know what time of the day then I was supposed to be somewhere else than where I was. Well, she knew where she had been, right? She knew where she had been, so she was getting everything and anything I could possibly get to justify that I did nothing wrong here. And, again, she was reinstated four months after she was discharged. But did she present that evidence at the hearing? My understanding was she didn't present. Because they changed the day. They changed the day to 9-3, 2013, when she walked into the hearing. So she couldn't have any evidence. And, again, it's not her obligation to gather everything. It's the employer's responsibility to tell her what exactly she did wrong. So she did have a union representative, and she had the pre-hearing and then the actual event at which led to her termination. There was a period of time, and she had a union representative that could have acted on the second date, the corrected date. So doesn't that give her the avenue to gather information so that she could respond? Absolutely not, because of the fact this case falls right in line with Tucker and Morton and those two cases where there was no specification, unlike the Gennady case, which they specifically said, we are questioning a concerning testimony presented in federal court under oath by Eugene Boris, an admitted number writer, that he paid you $60 per month for an extended period of time beginning in 1982. She just said all her notice said was you were not at a specified location and you falsified a report. What report did I falsify? You were at a specified location. Specified location related to the falsification of a mileage. Okay, I mean a certain street address or... You were not at a specified location. They told her what the location was? No, and that's the problem. Shouldn't you know the what, when, why, how? And before I have to say how unjustified and you shouldn't terminate me because you do reinstate me four months later. Had you given me all that data that we gathered in discovery and at the unemployment office, we would have been able to rebut. Why? I didn't do anything wrong and you should not terminate me. You should not suspend me without pay because of the fact I have no disciplinary actions in my record. And we know for a fact that a male employee, Jack Lipti, actually goes and gets his children on company time. He wasn't under secret surveillance, which proves my gender discrimination claim. Is any of that in the pleading, though, about why he was traveling? Is that in the complaint? Because remember the district court judge was adjudicating your gender claim and your retaliation claim based on the pleadings. Yes. Was there a specific allegation that this other employee on company time was permitted to run personal errands? Yes, within the third complaint that was filed within the case management time through the motion for reconsideration. So there's no way that this court should have not allowed me to amend my complaint and put that information, which I did, which I did not know until discovery. But clearly I did state in the second amended complaint that there was males that were treated better than she was. It was very general in the second amended complaint. You're saying in the third amended complaint you specifically identified this gentleman, Jack Lipti. Mr. Lipti and his individual conduct, specific conduct. No, not the conduct, but he was not treated. He didn't have to go under secret surveillance. And did the city of Scranton know about his conduct? Yes. And that's alleged? Within the third amended complaint, which I should have been allowed to file, I filed it within the case management order. I did the motion for reconsideration attached to the amended complaint. And I specifically said that Jack Lipti, you know, was guilty of wrongdoing, but he was not treated like she was. Did you say that she was reinstated? Absolutely. Before and after? Is she still working there? Actually, she's not working there now, but she was reinstated four months after she was fired. And then what happened to her there? Did she retire or what? Well, she's no longer working there, and she did have more problems with the employer. Any more questions? Not on this round. We'll see you tomorrow. Thank you. Good afternoon, Your Honors. Kevin Connaboy representing the city of Scranton. With regard to the retaliation count, count five of the second amended complaint, when the district court reviewed that complaint, it determined, sua sponte, as it is permitted to do under the decision in Roman v. Jeffs, that the bare bones allegations that were present at that point were insufficient to submit a claim for retaliation. What about the issue of leave to amend? Did the district court act appropriately by precluding a leave, an amended pleading, where it was filed within the time frame within the case management order? I would submit that it did, Your Honor, because if you look at the refusal to allow the amendment, the court initially indicates in its decision that the plaintiff had already been allowed to amend on two occasions and that allowing a third amendment at that point would constitute undue delay. On the motion for reconsideration, the court further goes on to say that a review of the proposed third amended complaint would be futile because it still would not survive a motion to dismiss. And if you look at the allegations of the proposed third amended complaint, I think that the timeline of what happened is very important. Okay. Your adversary agrees with that point, I'm certain, because she repeated it for us several times. So tell us what it shows you, because it shows your adversary that every time her client complained, some kind of job action was taken that was not typical, like email surveillance, receipt of notice of EEO filing, pre-termination meeting. Well, and Your Honor, the complaint that she makes of gender discrimination, the email, the court properly determined that under the facts that she had pled that the gender discrimination case could not survive. Let's focus on the retaliation claim. But even if it could not survive, the fact that she made such a claim and allegedly there was retaliation whether the claim was valid or not, isn't that retaliation for protected activity? I don't believe so, Your Honor, because what happens is they conduct the surveillance in late July and early August of 2013. It's only after the surveillance is commenced that she submits the claim to the EEOC. What did the surveillance show that's significant to us? The surveillance, Your Honor, ultimately showed that, and you had asked previously, how did they know where she was supposed to be? The procedure for the employees in Ms. Fowler's position was that at the end of each day they are to submit performance logs that indicate I was at such and such address, I performed an inspection, here are the photographs of those inspections, here are the miles that I traveled throughout the city during the course of the day that support me driving from point A to point B to point C during the time that I'm on the road. The surveillance showed her at times when her performance logs indicated that she was at properties performing inspections and taking photographs and the like, that she was actually parked behind a local bowling alley just sitting there for hours. And that's where the information that ultimately led to her termination came from. It was determined that she was not where her performance logs and her mileage sheets indicated that she claimed to be. And she was given notice of that and given an opportunity to respond. Let's move to the due process claim. That's fine for now. During the course of the encounter the plaintiff had with the representatives of Scranton, the record that we have in front of us says she asked whether there was surveillance in photos and she was told no. In fact, they existed. Due process comports fairness. How can we view an affirmative misrepresentation as to the status of the evidence by saying it didn't exist to comport with the notions of due process? Well, Your Honor, I think that the district court addressed that appropriately. And again, the prior administration and the prior employees, none of the decision makers that were involved are still at the city of Scranton. And there's been a change in leadership and a change of the employees who were involved in this decision. I think the district court appropriately pointed out that the steps that the city took during that hearing were not optimal under the circumstances. But I think that the district court also pointed out that Ms. Fowler had notice of what the issues were. She knew that she needed to explain to the city where she was, when she was there, what evidence she had that supported what she had submitted on her performance logs. Importantly, and during her deposition we learned this, Ms. Fowler kept probably in an effort to assist her in completing those performance logs accurately, she kept a personal notebook that said everywhere that she was throughout every day that she was working. It said what house she was at, what she did, what photo she took, when she went to the restroom, when she stopped for lunch. It was a detailed, essentially a diary of where she was and when she was there. What if the person didn't have a position like that where one would be documenting in that fashion? You were moving so quickly between visits you couldn't do the documentation. And that person had the same pre-termination and termination proceeding where the employer was asked, do you have pictures of surveillance? And that person was told no. That person would be operating in a totally different position because they would not know what they were trying to address when you have an affirmative statement that a surveillance doesn't exist. Of course the case law says the notice doesn't have to be of the sort of notice you might have to give in a criminal matter or in other proceedings. We recognize that in our case law. Here what seems to be different is that there was an affirmative misrepresentation about the evidence. You're suggesting, I suppose, that while that is bad we should ignore it because this particular plaintiff happened to have at least some materials to address the concerns presented. Well, not only that she had some materials to address the concerns presented, Your Honor, but also that she knew going into the hearing what the concerns were. She was told in the notice of charges that she was presented at the September 25th hearing that on two dates the city was questioning the information that was contained in her performance logs as to where she was and the information that she submitted to be reimbursed for mileage. And based upon that she knew that she needed to tell the city to present facts in her defense to say, I said I was at 123 Main Street issuing a stop work order. There's a stop work order that's issued there and my performance log says that and that's what I did and here are the pictures that show that I took pictures of that property. Or the city should have those pictures. That's where I was. She presented nothing. She essentially came in and said, well, do you have pictures or video? And they said no. And she said, okay, well, I don't have anything to tell you. And her union representative said, well, let's try to get this worked out. We can get it worked out. But they didn't present any evidence to show this is where I was. But the charges, and I think Judge Greenberg was touching on this, the charges were the willful destruction, displacement, or misuse of city property relating to Fowler having signed two inspection logs on two dates, saying she was at a specific location throughout the day and received payment for mileage. Your position is that would tell her enough that she should be able to document where she was throughout the day? Especially given the fact that she had a notebook that she had her own personal reference to say this is where I was. She could have said, here's my personal notebook that says here I was. Now, we're reviewing this at summary judgment, right? So we're reviewing this whether a reasonable juror could conclude that she has no, that due process has not been violated in order for you to prevail. Correct. Your view is that a reasonable juror would not be persuaded by the failure to disclose in response to a direct question the surveillance information because of what you just described as no harm, no foul. She was able to respond and defend herself. And there the purpose of notice and an opportunity to be heard was fulfilled. Correct. I see. Your Honor, one thing that appellant's counsel addressed is, and I don't really know that it's before this court, but she mentioned something about the progressive discipline and that the collective bargaining agreement required progressive discipline. That's simply not the case for the charges that were brought against Ms. Fowler. There are two different sections of discipline in the collective bargaining agreement. Section 2 sets forth certain offenses for which progressive discipline applies. Section 3 sets forth more serious offenses, which are of the type that Ms. Fowler was charged with, for which progressive discipline doesn't apply. So the progressive discipline argument, in my opinion anyway, is a red herring that really isn't before the court in any event. Well, the appellant argues that the retaliatory actions she alleges occurred so quickly after the protected acts that the timeline itself is sufficient. And you seem to take the opposite position. There are cases that say just the short period of time in and of itself is sufficient to show retaliation, at least to put the matter to the jury. Well, Your Honor, I think the timeline is important because the act that ultimately leads to her, that starts the ball rolling for her termination, is the surveillance. When they find out that she's not at the locations that she's telling her employer that she's at, that she's not at the locations that she's submitting mileage reimbursement requests for. That's the act that starts the ball rolling for the termination. And that all occurs before the EEOC complaint. And in the Second Amendment complaint, the plaintiff alleges, I submitted an EEOC complaint and shortly thereafter I was suspended. But isn't it, I mean, following up on the unduly suggestive timing line of cases that Judge Roth was asking you about, the employer had the fruits of the surveillance the day the surveillance occurred, which would have started August 6th and it went on for seven days. The employer takes no action on the fruits of that surveillance until after the EEOC complaint is filed. Because of the prism through which you look at the motion to dismiss, why isn't that enough to constitute unduly suggestive timing such that it should at least get past the motion to dismiss? I don't know that we can prove or let me know that the employer had the surveillance on the date that it was performed. The surveillance was performed by an outside entity. And reports were prepared that set forth, here's what I found in my surveillance. So it wasn't a city employee who performed the surveillance and immediately ran back to human resources and said, this is what I found. They had hired an outside agency. So I think that's it. You want us to construe the pleading to suggest that some inference in favor of the defendant should be drawn by the fact that the disciplinary notice was filed so many weeks after the surveillance occurred, that we should read in a specific fact. Well, I think that in looking at the Second Amendment complaint, the only thing that she complains of retaliation for is the EEOC filing. I understand that. You're right. That's what the pleading says. In the Third Amendment complaint, she then speaks more of the e-mail. It provides more detail. Correct. But again, the e-mail, that leads us into the gender discrimination argument that the district court properly found. I think Judge Ross and I are both asking whether that triggers the retaliation period, the conduct leading to retaliation. Rather, we're not focused on the gender claim, but the retaliation claim. Well, I would submit that it does not because the conduct that led to the decision to suspend had already occurred before the EEOC complaint was made. How would we know that from the pleading? Because that's all we have in front of us. So if you could direct us to how we would know from that pleading that the employer made the decision of termination before receipt of the EEOC notice. Well, I don't think that we would know that from that pleading, Your Honor. But when we look at the decision to deny the request for amendment to the Third Amendment pleading, it dovetails into the argument that looking at that Third Amendment pleading, the Third Amendment pleading on the retaliation is futile because the surveillance had already been conducted prior to the claimed protected event, which was the EEOC filing. I understand your position. Judge Greenberg, do you have any other questions for counsel? No. Nothing further, Your Honor. Okay. Thank you. Thank you for your argument. If you could respond to your adversary's point about the causal connection on the retaliation claim. Sure. My friend unfortunately doesn't understand retaliation includes both formal and informal complaints of discrimination. On 7-26-2013, she complained to her employer, I'm only being treated this way because I'm a woman in a man's job. Gender discrimination, clear, precise. We know from discovery that surveillance starts on 8-6-2013. They were well aware. All the discovery, I took the investigator, he was in constant communication with the employer. So the employer knew full well what was going on. So they could have terminated her then. They didn't terminate her. They only terminated her after she filed the formal EEOC complaint, which was filed on the 13th. They got notice of it on the 20th of September. They have this pre-suspension hearing on 9-25, and then they don't provide her. An employer has an obligation to tell you what you did wrong. And in this case, there's no question. The employer did not do that. They told her that they knew she hadn't been where she should have been. Well, shouldn't they tell me where I should have been then? Well, because they conclude that you have a position since you submitted a notebook with your records of where you went and what your mileage was. There wasn't where you should have been, and they're saying you weren't there. Okay. Well, first of all, you have to tell me, the employer, where I was wrong in order for me to tell you. No, I wasn't. Okay, you wanted me at 8 o'clock. I was supposed to be here, and my paperwork says no. The notebook is not comprehensive. It does not state everything and anything she did. And that all is for a jury to conclude, not for a judge to decide, well, I'm going to give the employer the benefit of the doubt. Oh, yes, they didn't do such a good job. They should have lied to her. My goodness. We shouldn't have employers lying to employees and not providing specific evidence and allegations. They should have said to her, you were supposed to be here. They should have showed her her mileage log. They never showed her a mileage log that she allegedly falsified. Why wouldn't you show that to an employee and say, this is the specific entry that we have a question with. Then the employee has an obligation to say, no, I was someplace else. And in this case, she actually was given the wrong date. So she came into the pre-deprivation hearing thinking she was under the gun for 8-28. It really was 9-3 she allegedly did wrong. How could she ever prepare for something she did wrong on a date she didn't know? So we submit that clearly there was enough to submit to a jury on the due process claim and the retaliation claim clearly withstood a motion to dismiss. Thank you, counsel. Thank you both. I don't have any other questions of this term. Thank you. Thank you, Judge Greenberg. All right, counsel, thank you for a well-argued case. We'll take it under advisement. Thank you.